UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIS DAVIS,

       Plaintiff,                        CIVIL ACTION NO. 08-13530

   v.                                DISTRICT JUDGE DENISE PAGE HOOD

CARLA WILBORN,                MAGISTRATE JUDGE MARK A. RANDON

       Defendant.

_____/

### REPORT AND RECOMMENDATION GRANTING
### DEFENDANT WILBORN'S MOTION TO DISMISS

### INTRODUCTION

    Plaintiff, a Michigan Prisoner, filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendant Carla Wilborn ("Wilborn") violated the "disability act" by refusing to exempt him from prison work and school assignments. Presently before the court is Wilborn's Motion to Dismiss Based on Failure to State a Claim and Qualified Immunity. To date, Plaintiff has not filed a response. For the reasons discussed below, the undersigned recommends that the motion be GRANTED. However, since Plaintiff is proceeding *pro se,* and a careful review of his complaint indicates that he *may* be able to allege a sustainable claim against Wilborn, it is also recommended that Plaintiff be given a reasonable opportunity to file an amended complaint as set forth below.

**A.     Background**

At all times relevant to this case, Plaintiff, Willis Davis, has been an inmate in the custody of the Michigan Department of Corrections ("MDOC"), housed at the Parnall Correctional Facility ("SMT") in Jackson, Michigan. Plaintiff suffers from an unspecified disability[1] for which he receives, or has received, the following SMT-approved accommodations: (1) use of a bottom bunk, (2) a metallic "4-prong" cane, (3) a handicap table, (4) use of an elevator, (5) a handicap shower, (6) extra bedding, and (7) a "No Work Assignment." (Dkt. No. 1, Ex. A)

**1.     The MDOC's Classification Policy for Work and School Assignments**

The MDOC utilizes a prisoner program classification system which is outlined in its Policy Directive Number 05.01.100 ("the Policy"). (Dkt. No. 8, Ex. A) Under the Policy, every employable prisoner must be classified to a work assignment unless they are assigned to school. (Dkt. No. 8, Ex. A, ¶ I) This classification is subject to review every six months. (Dkt. No. 8, Ex. A, ¶ I) Upon review, a prisoner may be reclassified as "unemployable" and, therefore, "ineligible" for a work assignment if he "has a currently valid medical restriction which prohibits participation in all work and school assignments." (Dkt. No. 8, Ex. A, ¶ Y) If a prisoner disagrees with a classification decision, a grievance may be filed.

---

[1] Plaintiff's disability is described as "unspecified" because his complaint does not identify a specific medical condition or describe the nature of his disability.

### 2. Plaintiff's 2006 Grievance Regarding His Classification

In 2006, Plaintiff filed a grievance complaining that he was required to attend school despite a medical condition which prevented him from "sitting for long periods" ("the 2006 Grievance"). Following an investigation, the SMT Assistant Deputy Warden ("ADW") approved the 2006 Grievance, at Step I, finding that Plaintiff was "medically exempt for any assignment" and would "not be required to attend school." (Dkt. No. 1, Ex. A) These findings were reviewed and approved by the SMT Deputy Warden ("DW"). (Dkt. No. 1, Ex. A)

### B.  The Events Giving Rise to Plaintiff's Complaint

According to Plaintiff's *pro se* complaint, on February 11, 2008, he was directed to meet with Wilborn, the SMT Classification Director, to be classified for prison assignments. (Dkt. No. 1, ¶ 2) Plaintiff informed Wilborn that he was medically exempt from work or school assignments because he was physically disabled. He also gave Wilborn a copy of the 2006 Grievance decision and a list of his SMT-approved accommodations. (Dkt. No. 1, ¶ 2) Wilborn refused to review these documents and instead "became sarcastic, and verbally abused plaintiff by telling him 'sign here and go press your bunk for 30 days.'" (Dkt. No. 1, ¶ 4) Instead of reclassifying him as unemployable, Wilborn placed Plaintiff on 00 status, "which restricted him from regular prison activities for 30 days." (Dkt. No. 1, ¶ 5) As a result of Wilborn's actions, Plaintiff claims to have been "denied the benefits of the yard, phone, and leisure activities as other inmates have; he was also excluded from participation in other self-help programs" and

potentially made to appear uncooperative to the parole board and housing unit correction officers. (Dkt. No. 1, ¶ 7)[2]

### 1. Plaintiff's 2008 Grievance Regarding His Classification

On February 12, 2008, Plaintiff filed a grievance against Wilborn for "failure to follow policy and procedure resulting in the discrimination of a disabled prisoner" ("the 2008 Grievance"). As a proposed resolution of the 2008 Grievance, Plaintiff sought the removal of Form CSX-175[3] from his prison file; a written apology from Wilborn; sensitivity training for Wilborn regarding disabled prisoners, a permanent unemployable classification, and damages in excess of $25,000.00.

### 2. SMT's Response to the 2008 Grievance

The Assistant Resident Unit Manager ("ARUM") of Plaintiff's housing unit issued the Step I Grievance Response on February 27, 2008, indicating that he had verified Plaintiff's prior medical accommodation, exempting him from work and school assignments, and had so informed Wilborn. Wilborn, in turn, said that she would make the necessary corrections to Plaintiff's designation and note his assignment status as exempt. (Dkt. No. 1, Ex. C)

Plaintiff appealed the Step I Grievance Response, asserting that although the response was appropriate, it did not correct events that had occurred as a result of the erroneous initial

---

[2]Plaintiff's complaint seeks compensatory and exemplary damages in excess of $10,000.00. (Dkt. No. 1, ¶ 8)

[3]Form CSX-175 is the "Program Classification Report" prepared by Defendant Wilborn on February 11, 2008, indicating Plaintiff was on "Full Duty" and was required to obtain a GED and, thereafter, a routine work assignment.

classification; specifically, the Warden's February 11, 2008 Memorandum explaining the consequences of refusing a school or work assignment; the "erroneous CSX-175 dated February 11, 2008"; the form CSJ-126, and the responsive letter from the Warden's Administrative Assistant. (Dkt. No. 1, Ex. C)

The Warden provided the Step II grievance appeal response, stating: "[t]his office has instructed housing unit, record office and classification staff to remove the letter submitted by the Warden and the CSX-175 from all your files." The Warden further advised Plaintiff that the memo from her Administrative Assistant ("AA") would not be removed because it was prepared in response to his correspondence. (Dkt. No. 1, Ex. C)

Plaintiff filed a Step III grievance appeal, again indicating that he had prevailed on the merits of his grievance but asserting that there was no evidence the erroneous paperwork had been removed from his files and that the AA's responsive memorandum should also be removed. The Step II Grievance Response was upheld at Step III of the grievance process. (Dkt. No. 1, Ex. C)

## STANDARD OF REVIEW

A motion for judgment on the pleadings is a motion to dismiss. In facing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570 (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citations omitted).

      The Supreme Court recently explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1949 (2009). Thus, although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

Where a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). However, courts may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999), nor may courts construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993). Neither may the court "conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), nor create a claim for Plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975), because to hold otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**A.      The Effect of Plaintiff's Failure to Respond to Defendants' Motion to Dismiss**

Local Rule 7.1 (b) states that "[a] respondent opposing a motion must file a response, including a brief and supporting documents then available." "[W]hile pro se litigants may be entitled to some latitude when dealing with sophisticated legal issues, acknowledging their lack of formal training, there is no cause for extending this margin to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer." *Jourdan v. Jabe*, No. 90-1850, slip op. at 1-2 (6th Cir. Oct. 9, 1991) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

On May 26, 2009, Wilborn filed the instant motion to dismiss. (Dkt. No. 8) On July 22, 2009, this case was transferred from Magistrate Judge Pepe to the undersigned. The next day, Plaintiff was ordered to file a response to Wilborn's motion on or before August 24, 2009. (Dkt. No. 11) To date, however, Plaintiff has not filed a response to the motion to dismiss. Therefore, Wilborn's motion may be deemed unopposed. *Humphrey v. U.S. Attorney General's Office*, 279 Fed.Appx. 328, 2008 WL 2080512 (6th Cir., May 15, 2008). Notwithstanding the lack of opposition, Wilborn's motion is still well-taken in light of the analysis set forth below.

## ANALYSIS

**A.     Plaintiff's Complaint is Treated as Though Filed Pursuant to the ADA**

Plaintiff's complaint is entitled "Civil Rights Complaint [-] Disability Act [-] 42 U.S.C. 1983." Besides the title, Plaintiff's complaint does not name or reference a specific statute. Therefore, the undersigned assumes that Plaintiff seeks to proceed pursuant to the Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 and/or § 504 of the Rehabilitation Act (the "Rehabilitation Act"), 29 U.S.C. § 794(a). Other than the federal funding requirement, the ADA and Rehabilitation Act are similar substantively and "cases interpreting them are applicable and interchangeable." *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998); *Doe v. Salvation Army in the United States*, 531 F.3d 355, 357 (6th Cir. 2008) (claims brought under the Rehabilitation Act are reviewed like claims brought under the ADA). Therefore, the sufficiency of Plaintiff's complaint need only be examined under the ADA.

Title II of the ADA prohibits discrimination on the basis of a disability and provides:

> No qualified individual with a disability shall, by reason of such
> disability, be excluded from participation in or be denied the
> benefits of the services, programs, or activities of a public entity, or
> be subjected to discrimination by such entity.

As Wilborn correctly notes, the proper defendant under an ADA Title II claim is the public entity or an official acting in his official capacity. *Everson v. Leis*, 556 F.3d 484, 501 (6th Cir. 2009) citing, *Carten v. Kent State Univ.*, 282 F.3d 391, 396-97 (6th Cir. 2002). Title II of the ADA does not provide for suit against a public official acting in his individual capacity. *Id*. Further, since qualified immunity protects a public official in his individual capacity from civil damages, such immunity is unavailable to the public entity itself or the official acting in his official capacity. *Hall v. Tollett,* 128 F.3d 418, 430 (6th Cir.1997).

Wilborn also contends that "official capacity claims are barred by sovereign immunity if an ADA Title II claim sounds in equal protection as opposed to due process." (Dkt. No. 8, p. 4) In making this argument, Wilborn relies on *Carten, supra; Robinson v. University of Akron School of Law*, 307 F.3d 409 (6th Cir. 2002), and *Tanney v. Boles*, 400 F. Supp. 2d 1027 (E.D. Mich. 2005). However, Wilborn's reliance on these cases for her claim of immunity is misplaced in light of the Supreme Court's subsequent decision in *U.S. v. Georgia*, 546 U.S. 151 (2006).

**B.    The *U.S. v. Georgia* Standard for Evaluating Immunity Claims Under ADA Title II**

In *Georgia*, the Supreme Court "mandated a [new] procedure for federal courts to follow when confronted with a state's claim of immunity under the Eleventh Amendment in cases involving ADA Title II." *Zibbell v. Michigan Dept. Human Services*, 313 Fed.Appx. 843 (6th Cir., Feb. 23, 2009). The Court held that "insofar as Title II creates a private cause of action for

damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." (Emphasis in original)  *Georgia,* 546 U.S. at 157. In other words, if a plaintiff's ADA Title II allegations also independently violate the Fourteenth Amendment, the offending state, or state official, is not immune from ADA liability.

Under *Georgia,* lower courts must utilize the following three-step analysis, on a claim-by-claim basis, in determining whether or not immunity applies: (1) which aspects of the State's alleged conduct violated Title II of the ADA; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) in so far as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress' purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid. *Georgia*, 546 U.S. at 159.  Lower courts have also been directed to consider the second and third steps of the analysis only if a plaintiff has a viable claim under step one.  *Id*. at *847-48.  Thus, the undersigned's analysis will begin with a determination of whether Plaintiff has stated a viable claim under Title II of the ADA.

**C.      Plaintiff's *Pro Se* Complaint States a Viable Title II ADA Claim**

To state a claim under Title II of the ADA, a plaintiff must show: (1) he is a "qualified individual with a disability"; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. See 42 U.S.C. § 12132; *Kaltenberger v. Ohio College of Podiatric Medicine*, 163 F.3d 432, 435 (6th Cir. 1998).

In deciding whether a complaint should survive a motion to dismiss for failure to state a claim, a court may consider documents attached to the pleadings. Fed. R. Civ. P. 10(c); *Commercial Money Center v. Illinois Union Ins. Co.*, 508 F.3d 327 (6th Cir. 2008). In addition, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Id.,* citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999).

Under the ADA, a "disability" is a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102. Reviewing the complaint, and attached documents referred to therein, in a light most favorable to Plaintiff, he suffers from a condition that substantially limits his ability to sit for long periods of time, a major life activity.[4] Plaintiff has also sufficiently alleged that he was excluded from or denied the benefit of certain prison leisure activities and rehabilitation programs, and a state prison is considered a public entity for purposes of an ADA claim. *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998). Last, while Plaintiff does not explicitly allege that the reason Wilborn denied him an "unemployable" classification was because of his disability, the possibility that Wilborn's actions were because of Plaintiff's disability is reasonably implied from his complaint and attached documents (i.e., Wilborn was aware of Plaintiff's physical disability *before* refusing to classify him as unemployable, medical staff at SMT had previously provided Plaintiff with accommodations for his disability, and the SMT's DW and ADW had

---

[4]If Plaintiff is permitted to file an amended complaint, these facts should be set forth in the body of his complaint.

exempted him from school and work assignments in the past). Therefore, when applied to the standard of review discussed above, Plaintiff's *pro se* complaint states a claim for discrimination under Title II of the ADA.

**D.     Plaintiff's Complaint does not Allege an Independent Violation of the Fourteenth Amendment**

The next step in the *Georgia* analysis is to determine to what extent the misconduct alleged in Plaintiff's complaint also violates the Fourteenth Amendment. If Plaintiff's allegations independently set forth a violation of the Fourteenth Amendment, Congress intended to abrogate the State's immunity under Title II of the ADA. On the other hand, if there is no independent violation of the Fourteenth Amendment, Congress did not intent to abrogate immunity and Wilborn is immune from suit under the ADA.

**1.     Plaintiff's Complaint Does not Allege a Fourteenth Amendment Equal Protection Claim**

The Equal Protection Clause of the Fourteenth Amendment states that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S.C.A. Const. Amend. XIV § 1. "The states cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005); *Vacco v. Quill*, 521 U.S. 793, 799 (1997). The Equal Protection clause "embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly." *Id.*; *Vacco*, at 521 U.S. at 799. However, in order for the court to apply strict scrutiny, the plaintiff must "allege that he was denied equal protection of the law based upon an unjustifiable standard

such as race, religion, or other arbitrary classification" or was intentionally discriminated against because of his membership in a particular class, not merely that he was treated unfairly as an individual." *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir.1999).

Plaintiff's complaint fails to allege an independent violation of the Fourteenth Amendment. First, the "benefits" that Plaintiff claims he was denied by Wilborn's conduct do not involve fundamental rights.[5] *See, for example*, *Moody v. Dagett*, 429 U.S. 78, 88, n. 9 (1976) (holding that federal prisoners have no statutory or constitutional right is to participate in rehabilitative programs while incarcerated) and the cases cited by Wilborn (Dkt. No. 8 pp. 7-8). Second, "[a]lthough protected by statutory enactments such as the Americans with Disabilities Act, the disabled do not constitute a 'suspect class' for purposes of equal protection analysis." *Hansen v. Rimel*, 104 F.3d 189, 190 (8th Cir.1997); *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 442 (1985). And third, Plaintiff has not alleged that he was treated differently from other prisoners with disabilities. Accordingly, under *Georgia*, Wilborn is immune from liability unless Plaintiff is granted leave to amend his complaint to state an independent equal protection violation, *if one exists*.[6]

---

[5]This also explains why Plaintiff cannot state a claim for violation of due process under the Fourteenth Amendment. In addition, *see, Sandin v. Conner,* 515 U.S. 472, 484 (1995) (An inmate's due process claim is without merit absent allegations that there has been a restraint upon his freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.");Wilborn's brief at pages 7-8 (Dkt. No. 8).

[6]Once the court has determined that an independent Fourteenth Amendment violation has not been alleged, the court's inquiry must stop and not proceed to the next step. *Zibbell*, 313 Fed.Appx. at 848.

**E.      Plaintiff Should be Granted an Opportunity to Amend his Complaint**

While Plaintiff's complaint does not allege an independent violation of the Equal Protection clause, he may reasonably be able to plead such a violation if granted leave to amend. Indeed, Wilborn's motion concedes that Plaintiff's action "sounds" in equal protection:

> Thus, Plaintiff is claiming that he was treated differently from other similarly situated inmates who are exempted from school and work assignments due to a disability.

(Dkt. No. 8, p. 6)  Plaintiff did not *actually* allege differential treatment but may be able to do so in an amended complaint.  As such, if this Report and Recommendation is adopted, Plaintiff should be afforded twenty (20) days from the date of adoption to file an amended complaint that addresses these deficiencies. *Berndt v. State of Tennessee*, 796 F.2d 879 (6th Cir. 1986); *Myers v. United States*, 636 F.2d 166, 169 (6th Cir. 1981) (Pleadings should be construed to do substantial justice when drafted by *pro se* plaintiffs.)  Should he fail to do so, Plaintiff's case should be dismissed in its entirety for failure to state a claim.

## RECOMMENDATION

For the reasons stated above, it is RECOMMENDED that Wilborn's Motion to Dismiss (Dkt. No. 8) be GRANTED.  IT IS FURTHER RECOMMENDED Plaintiff be given twenty (20) days to file an amended complaint addressing the deficiencies noted above.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140

(1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fails to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

      Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

S/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated:  September 22, 2009

Certificate of Service

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, September 22, 2009, by electronic and/or ordinary mail.

s/Melody R. Miles
Case Manager to Magistrate Judge Mark A. Randon